The Honorable L.L. "Doc" Bryan State Representative 305 South VanCouver Russellville, AR 72801
Dear Representative Bryan:
This is in response to your request for an opinion concerning the authority of a school to allow a social worker access to a student to interview the student regarding suspected child abuse. Your letter indicates that an incident has occurred in the Dover School District in which officials from S.C.A.N. [Suspected Child Abuse and Neglect] represented to school authorities that S.C.A.N. had legal authority to interview students without parental permission. Your specific questions are as follows:
 1. To what extent does A.C.A. § 12-12-504 give social workers unlimited access to students, and does this particular law supersede parental rights under 42 U.S.C.A. § 1232g? [Sic.][1]
 2. To what extent is the school liable for damages under 42 U.S.C.A. § 1232g (sic) if it reports a case of suspected child abuse under A.C.A. § 12-12-504 without first contacting the child's parents?
In answer to your first question, social workers have extensive authority to enter schools and have access to students for purposes of investigations under the Arkansas act mandating child abuse reporting (A.C.A. §§ 12-12-501—518 (Cum. Supp. 1991)). The provisions of this Act, however, are of a wholly different nature than those set out in the Family Educational Rights and Privacy Act (20 U.S.C.A. § 1232g). Thus, while A.C.A. §§12-12-501—518 govern the reporting of cases of suspected child abuse in the state, these provisions are independent of and not superseded by those of the Family Educational Rights and Privacy Act.
Arkansas Code Annotated §§ 12-12-501—518 (Cum. Supp. 1991) requires individuals in certain categories to report cases of suspected child abuse to authorities. Included among those required to report are "teacher[s], school official[s], [and] school counselor[s] [who have] reasonable cause to suspect that a child has been subjected to child maltreatment, . . . or who observe the child being subjected to conditions or circumstances which would reasonably result in child maltreatment." A.C.A. § 12-12-507(b) (Cum. Supp. 1991). The act imposes upon the Arkansas Department of Human Services the duty to investigate reports of suspected child maltreatment. A.C.A. § 12-12-509(a)(1) (Cum. Supp. 1991). The Department's investigation is to begin within seventy-two hours of being notified of the suspected child maltreatment, or within twenty-four hours if the notice contains an allegation of severe maltreatment. A.C.A. §§ 12-12-509(a)(2)(A) and (B). Additionally, A.C.A. § 12-12-510(a) (Cum. Supp. 1991) states:
 The person conducting the investigation shall have the right to enter into or upon the home, school, or other place for the purpose of conducting an interview or completing the investigation as required by this subchapter.
The statute clearly authorizes those charged with the duty to investigate reports of suspected child abuse to have access to students upon school property for purposes of conducting their interviews and investigations.[2] Schools are thus not in a position to deny to social workers access to students for purposes of conducting these mandated investigations.
In response to the second part of your first question, A.C.A. §§12-12-501—518 and 20 U.S.C.A. § 1232g are two statutes of an entirely different nature, and thus each grants rights independent of and not superseded by the other.
As set out above, A.C.A. §§ 12-12-501—518 pertain to the reporting of suspected child abuse. Title 20 U.S.C.A. § 1232g
establishes confidentiality of school records. The rights granted to parents under 20 U.S.C.A. § 1232g include the right to inspect and review the education records of their children (§ 1232g(a)(1)(A)); the right to a hearing provided by the educational institution to challenge the content of the student's education records, to correct or delete any inaccurate, misleading or otherwise inappropriate data contained in the records, and to insert into the records a written explanation of the parents about the content of the records (§ 1232g(a)(2)); the right to withhold consent for the release by the educational institution of any or all information about the student designated for publication in an educational directory (§ 1232g(a)(5)(B)); the right to prevent the release of the education records of the student to certain individuals or organizations without prior consent to such a release in writing (§ 1232g(b)(1)); the right to avail themselves of the record of persons requesting or obtaining access to the student's education records required to be maintained by the educational institution (§ 1232g(b)(4)(A)); and the right to be informed by the educational institution of the rights accorded them by the Act (§ 1232g(e)).
Parents thus do have certain rights relative to the educational records of their children pursuant to 20 U.S.C.A. § 1232g. Ark. Code Ann. § 12-12-501, however, specifically sets out that the legislative intent of this Act is to protect the best interest of the child and prevent further harm to the child. Children, then, may possess rights independent of, and potentially adversarial to, their parents. Meyer v. Nebraska, 262 U.S. 390,43 S.Ct. 625 (1923). Parental behavior which is abusive or neglectful is not constitutionally protected. Wisconsin v. Yoder,406 U.S. 205, 92 S.Ct. 1926 (1972). In light of these competing interests, parental rights are not absolute, but must be balanced against those of the child by employing an analysis similar to that set out in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593 (1972). The potential for present and future harm to an abused child is extreme. The harm accruing to a parent from an interview (which is confidential, pursuant to A.C.A. § 12-12-506(f) (Cum. Supp. 1991)) is miniscule by comparison. The Arkansas Supreme Court has announced that the rights of the children "are at least as great as those of the parents." Robins v. Arkansas Social Services,273 Ark. 241, 247, 617 S.W.2d 857, 860 (1981).
In short, an interview conducted by a social worker with a student on school grounds for purposes of investigating a case of suspected child abuse is clearly authorized by A.C.A. §§12-12-501—518 (Cum. Supp. 1991); the provisions of20 U.S.C.A. § 1232g pertaining to the confidentiality of educational records would not govern such a situation. The two acts are of a different nature, and, to the extent inquired in your letter, neither is superseded by the other.
It is my opinion that the answer to your second question is that a school incurs no liability for damages under20 U.S.C.A. § 1232g for reporting a case of suspected child abuse under A.C.A. §§ 12-12-501 — 518 without first contacting the child's parents.
First, as set out above, when a school reports cases of suspected child abuse to authorities pursuant to A.C.A. §§ 12-12-501 — 518, there is no parental right enumerated in 20 U.S.C.A. § 1232g
which is violated by such a report. It is the confidentiality of educational records which 20 U.S.C.A. § 1232g is designed to protect. The act defines records as "records, files, documents, and other materials which contain information directly related to a student and [which] are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C.A. § 1232g(a)(4)(A). The implementing regulations, found at 34 C.F.R. § 99.3, define records as "handwriting, print, tape, film, microfilm, and microfiche." Records, then, are tangible items maintained by the school. An as yet unconducted interview is, by definition, not a record and thus is not subject to the protection of the act. Interviews conducted by social workers pursuant to A.C.A. §§ 12-12-501—518 can neither be in the possession of a school under the Act nor can they be the property of or disclosed by the school. To the contrary, if the school learns of the contents of the interview, it would, in all likelihood, be because the social worker has informed a counselor of the school pursuant to A.C.A. § 12-12-515(a)(2) (Cum. Supp. 1991). The disclosure would thus be by the social worker to the school, and not vice versa. Accordingly, 20 U.S.C.A. § 1232g clearly would not apply in such a situation.
Additionally, 20 U.S.C.A. § 1232g provides for neither a private right of action nor for damages. Rather, the Act is designed for the discontinuance of federal funding to educational institutions with a practice of releasing protected records. The Act does not say that a private remedy is given, and courts have held accordingly. See Girardier v. Webster College, 563 F.2d 1267,1277 (8th Cir. 1977); Price v. Young, 580 F.Supp. 1, 2 (E.D. Ark. 1983).
Second, also as set out above, school officials are mandated to report suspected cases of child maltreatment. A.C.A. § 12-12-507(b) (Cum. Supp. 1991). The Act specifically provides for absolute immunity from both civil and criminal liability for those required to make reports who make them in good faith. A.C.A. § 12-12-517 (Cum. Supp. 1991). On the other hand, school officials may suffer civil penalties for failure to make notifications they are required to make. A.C.A. § 12-12-504(b) (Cum. Supp. 1991).
In sum, it is my opinion that a school would not be liable for damages to parents under 20 U.S.C.A. § 1232g if it reports a case of suspected child abuse as that statute neither governs such a situation nor provides for a private cause of action. And a school would not be liable to the parents for reporting the suspected child abuse under A.C.A. §§ 12-12-501—518 as that statute both mandates that the school report any suspected maltreatment of children and provides for absolute immunity from both civil and criminal liability for schools reporting in good faith.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
WINSTON BRYANT Attorney General
SD/WB:cyh
[1] I assume your question refers to the Family Educational Rights and Privacy Act, codified at section 1232g of Title 20 of the United States Code, as there is no correlating section 1232g in Title 42 of the United States Code.
[2] The Arkansas Department of Human Services has the authority to contract with private, non-profit social service agencies for purposes of providing services. See A.C.A. § 9-16-105 (Cum. Supp. 1991). The Department has, pursuant to this grant of authority, contracted with S.C.A.N. (Suspected Child Abuse and Neglect) to conduct interviews and investigations of suspected child abuse, and S.C.A.N. representatives are thus authorized investigatory agents under A.C.A. §§ 12-12-510—518.